**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

DR. PAUL SELINGER and MARSHA
SELINGER,

                        Plaintiffs,

           -against-

THE CITY OF NEW YORK, ROBERT M.
MORGENTHAU, in his individual and official
capacity as District Attorney, KATHRYN
QUINN, in her individual and official capacity
as Assistant District Attorney, DETECTIVE
WILLIAM GREENE, in his individual and official
capacities, LIEUTENANT ANGELO CARBONE,
in his official and individual capacities, and
DETECTIVES and/or POLICE OFFICERS
JOHN/JANE DOES 1-5, in their individual and
official capacities,

                    Defendants.

---------------------------------------------------------------x

08 Civ. 2096 (RMB)

**DECISION & ORDER**

## I.    Introduction

On or about March 3, 2008, Dr. Paul Selinger ("Dr. Selinger") and Marsha Selinger

("Mrs. Selinger") (collectively, "Plaintiffs") filed a complaint ("Complaint") against The City of

New York ("City"), District Attorney Robert M. Morgenthau ("DA Morgenthau"), former

Assistant District Attorney Kathryn Quinn ("Quinn"), and Detectives and/or Police Officers

John/Jane Does 1–10, pursuant to 42 U.S.C. § 1983, alleging, among other things, that the arrest

and prosecution of plaintiff Dr. Selinger based upon his alleged involvement in an insurance

fraud scheme was "without probable cause."  (Compl., dated Feb. 27, 2007 ("Compl."), ¶¶ 55,

136.)  Plaintiffs assert claims against all Defendants for "false arrest," "malicious prosecution,

abuse of process, loss of consortium, and negligence/gross negligence."  (Compl. ¶¶ 1, 130–207.)

On or about July 3, 2008, the City filed an answer ("Answer") to the Complaint. (See Ans., dated July 3, 2008.)

On or about August 1, 2008, Plaintiffs filed an Amended Complaint ("Am. Compl.") adding Detective William Greene ("Greene") as a co-defendant. (Am. Compl., dated July 30, 2008 ("Am. Compl."), ¶ 18.) On or about August 22, 2008, Plaintiffs filed a Second Amended Complaint adding Lieutenant Angelo Carbone ("Carbone") as a co-defendant (collectively, with the City, DA Morgenthau, Quinn, and Greene, "Defendants"). (Sec. Am. Compl., dated July 30, 2008 ("SAC"), ¶ 18.)[1]

On or about October 31, 2008, Defendants jointly moved to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(5), 12(b)(6) and 12(c). (Mem. of Law in Supp. of Defs.' Consolidated Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5), 12(b)(6), and 12(c), dated Oct. 31, 2008 ("Defs. Mem.") at 1.)[2] Defendants argue, among other things, that (1) Plaintiff's "federal claims for false arrest against Greene and Carbone are barred by the applicable statute of limitations"; (2) "even if [Plaintiffs] had timely substituted the John Doe officers [i.e., Greene and Carbone] as actual persons, plaintiff Paul Selinger's claim for false arrest fails as a matter of law because the existence of the indictment at

---

[1]     Although Plaintiffs claim that they have been "severely prejudiced by the actions of City Defendants in failing to provide the identity of [a] third officer in a timely manner," (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Compl., dated Nov. 26, 2008 ("Pls. Mem."), at 6), Corporation Counsel appears to have disclosed this officer's identity to Plaintiff prior to Plaintiffs' filing of the Second Amended Complaint. See Letters to the Court, dated August 7, 2008 and August 13, 2008, (see Ltr. to Hon. Richard M. Berman, dated Aug. 7, 2008, at 1; Dkt. #23 ("Defendants have identified the John Doe officer[] as . . . Undercover #2640, and have previously provided this information to [P]laintiffs"); Ltr. to Hon. Gabriel W. Gorenstein, dated Aug. 13, 2008, at 1; Dkt. #25 (Defendants "identified an undercover officer – UC 2640 – who [was] also involved in the investigation of plaintiff Paul Selinger")).

[2]     "As the City [] previously answered the [C]omplaint, its motion is brought pursuant to Fed. R. Civ. P. 12(c); all other defendants [i.e., Greene, Carbone, DA Morgenthau, and [former ADA Quinn] move pursuant to Fed. R. Civ. P. 12(b)." (Defs. Mem. at 1 n.1.)

the time of arrest absolutely precludes plaintiff's false arrest action"; (3) "even if [P]laintiff's false arrest claim[s] [were] timely and cognizable, defendants Green and Carbone are entitled to qualified immunity"; (4) "[P]laintiff's malicious prosecution and abuse of process claims fail as a matter of law" against "William Greene or Angelo Carbone" because "probable cause [] arises from [Dr. Selinger's] indictment"; (5) Plaintiffs' "conclusory allegations cannot support municipal liability"; (6) Plaintiffs' failure "to comply with the mandatory New York statutory notice-of-claim requirements" requires dismissal of Plaintiffs' state law claims (for malicious prosecution, abuse of process, negligence/gross negligence, and loss of consortium); (7) "[P]laintiffs failed to timely serve former ADA Quinn" i.e., the "affidavit [of service] does not state that the papers were mailed [to former ADA Quinn] as required by N.Y. C.P.L.R. § 308(2)"; and (8) "[P]laintiffs' claims against DA Morgenthau are foreclosed by the defense of absolute prosecutorial immunity or are otherwise facially deficient" and the arguments "in support of DA Morgenthau's 12(b)(6) motion . . . apply with equal force to [former] ADA Quinn." (Mem. of Law in Supp. of Defs.' Consolidated Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5), 12(b)(6), and 12(c), dated Oct. 31, 2008 ("Defs. Mem."), at 2, 5, 7, 11, 13, 14, 17 n.1; Reply Mem. in Supp. of Def.'s Mot. to Dismiss, dated Dec. 10, 2008 ("Reply"), at 12 (internal quotations omitted).)

On or about November 26, 2008, Plaintiffs filed an opposition, arguing, among other things, that (1) "Defendants Greene [and] Carbone . . . should be estopped from asserting any statute of limitations defense based on the equitable tolling doctrine"; (2) "the Complaint sufficiently raises issues of fact regarding whether the indictment (upon which the City relies herein) was improperly obtained and whether [Defendants' arrest of] Plaintiff[] was privileged"; (3) "Defendants should not be able to rely upon qualified immunity at this juncture"; (4)

3

"Defendant officers [i.e., Greene and Carbone] continued to support and advance the prosecution of Dr. Selinger knowing that said prosecution lacked probable cause"; (5) "the specific actions taken against Dr. Selinger were taken pursuant to widespread custom or practice . . . [and] by [the failure] to train/supervise the individual Defendants"; (6) "Plaintiffs timely filed notices of claim on Defendants . . . in May 2007"; (7) Defendant Quinn "was personally served in a timely manner, on April 23, 2008 in Washington D.C."; and (8) "the Complaint alleges sufficient facts to defeat Defendants' [i.e., DA Morgenthau's and former ADA Quinn's] 12(b) motion with respect to absolute . . . immunity" because "the Complaint clearly sets-forth issues of fact regarding the actions taken by [DA Morgenthau] before the establishment of probable cause and before any criminal judicial proceedings were initiated against Plaintiff." (Pls. Mem. at 3, 4, 7, 11, 17, 21, 23.)

On or about December 10, 2008, Defendants filed a Reply. The parties waived oral argument.

**For the following reasons, Defendants' motion to dismiss the Second Amended Complaint is granted in part and denied in part.[3]**

## II.   Background

For the purposes of this motion, the allegations of the Complaint are taken as true. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).

Dr. Selinger is a licensed dentist who owns and operates his own general dental practice in Middle Village, New York and provided professional dental services for an organization known as Omni Medical Care and/or the Omni Medical Clinic ("OMC"). (SAC ¶¶ 14, 20, 21.)

---

[3]      The Court is not here ruling upon the ultimate merits of Plaintiffs' claims.

"[F]rom the year 2004 to the present, [Defendants] planned and executed an alleged sting operation and/or investigation into the billing practices of several individual doctors and medical service providers," including, among others, OMC. (SAC ¶ 30.) In or around August 2004, an unidentified undercover officer visited OMC disguised as a patient seeking medical treatment. (SAC ¶ 33.) Dr. Selinger examined the undercover officer in order to locate and diagnose the alleged problem. (SAC ¶ 37.) Dr. Selinger submitted his records of the treatment of the undercover defendant officer to OMC but "never dealt with billing and/or any aspects of procuring payments from customers of OMC." (SAC ¶¶ 39, 44.)

"Following that single visit of [the undercover] officer to Dr. Selinger on August 4, 2004, sometime thereafter [Defendants] accused Dr. Selinger along with several other doctors and medical professional practices, including but not limited to [OMC] of conspiracy, insurance fraud, enterprise corruption, grand larceny, and other alleged crimes." (SAC ¶ 60.) Plaintiffs allege that "[DA] Robert M. Morgenthau, [former ADA] Kathryn Quinn and the other individual Defendants unreasonably decided to submit evidence of the wrongdoing of others against Dr. Selinger to insure that the Grand Jury would indict Dr. Selinger along with others [who] were allegedly involved in a conspiracy to defraud." (SAC ¶ 68.) As a result, Dr. Selinger was indicted by the Grand Jury. (SAC ¶ 74.)[4]

Dr. Selinger's criminal case (People v. Pustilnik, et al., Index No. 2005/2759) was dismissed outright with respect to Dr. Selinger on March 1, 2007. (SAC ¶ 123.) "Judge [Roger S.] Hayes, in his decision dismissing the charges against Dr. Selinger, wrote that 'there is no evidence, direct or circumstantial, Selinger made, approved, or became aware of inaccurate or

---

[4]     The Second Amended Complaint does not state the date of Dr. Selinger's arrest or the date that he was indicted. In their Memorandum of Law, Defendants state that "on March 22, 2005 . . . [Dr. Selinger] was arrested" and that Dr. Selinger "was indicted prior to his arrest." (Defs. Mem. at 3.)

exaggerated entries for this patient, nor that he had any knowledge [others] would do so.'" (SAC ¶ 128.)

Plaintiffs allege that (i) Defendants "knew or should have known, or would have known had they conducted minimal investigation . . . that Dr. Selinger never dealt with billing and/or any aspects of procuring payments from customers [who] visited [OMC] (including defendant officers) or from their insurance companies" (SAC ¶ 50); (ii) Defendants "lacked probable cause based upon a proper investigation of the facts and therefore wrongfully arrested, wrongfully imprisoned, wrongfully detained and maliciously prosecuted Dr. Selinger" (SAC ¶ 120); and (iii) "Dr. Selinger was caused to suffer monetary losses to his own dental practice"; and "Plaintiff Marsha Selinger, who relies upon Dr. Selinger for financial [and emotional support] was caused to be without said [] support for an extended period of time." (SAC ¶¶ 102, 112, 113.)

## III.   Legal Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." Bernheim, 79 F.3d at 321.  The court's task "is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Weir v. City of New York, No. 05 Civ. 9268, 2008 U.S. Dist. LEXIS 61542, at *26 (S.D.N.Y. Aug. 11, 2008).  At the same time, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1964–65 (2007) (internal quotations and citation omitted); see also Balkanli v. City of New York, No. 07 Civ. 2204, 2009 U.S. Dist. LEXIS 40633, at *3 (S.D.N.Y. May 14, 2009).  "[P]laintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a

right to relief above the speculative level.'" <u>Sforza v. City of New York</u>, No. 07 Civ. 6122, 2009

U.S. Dist. LEXIS 27358, at *17 (S.D.N.Y. Mar. 31, 2009). "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations." <u>Ashcroft

v. Iqbal</u>, 556 U.S. --, 2009 US LEXIS 3472, at *31 (U.S. May 18, 2009).

      "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a

motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and

drawing all reasonable inferences in favor of the nonmoving party." <u>Burnette v. Carothers</u>, 192

F.3d 52, 56 (2d Cir. 1999).

      "In considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a

Court must look to matters outside the complaint to determine whether it has jurisdiction."

<u>Darden v. Daimlerchrysler N. Am. Holding Corp.</u>, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

When a defendant raises a Rule 12(b)(5) "challenge to the sufficiency of service of process, the

plaintiff bears the burden of proving its adequacy." <u>Preston v. New York</u>, 223 F. Supp. 2d 452,

466 (S.D.N.Y. 2002).

**IV.**    **Analysis**

    (1)    **Statute of Limitations**

      Defendants argue, among other things, that Dr. Selinger's alleged false arrest claim

accrued on March 22, 2005, when he was arrested; "the Complaint was filed on March 3, 2008,

right at the cusp of the three year cutoff for federal claims [i.e., March 22, 2008]"; and Greene

and Carbone were not "identified within the statute of limitations," the amendments to the

Complaint "do[] not 'relate back'" and "all false arrest claims against the officers are barred."

(Defs. Mem. at 5.) Plaintiffs counter, among other things, that they attempted to obtain the

names of Greene and Carbone by "serv[ing] the City with a subpoena along with the Summons

7

and Complaint"; "the parties agreed" that "Plaintiffs would withdraw the subpoena and

[Corporation Counsel] would provide the names of the unknown officers to Plaintiff"; the City

"failed to comply with its promises"; and Greene and Carbone "should be estopped from

asserting [a] statute of limitations defense." (Pls. Mem. at 4, 5.)[5]

     "In cases of false arrest, the cause of action accrues on the date of the arrest," Miro v.

City of New York, No. 05 Civ. 10570, 2007 U.S. Dist. LEXIS 15412, at *15 (S.D.N.Y. Feb. 21,

2007), and "[t]he statute of limitations for a Section 1983 action in New York is three years."

Mabry v. City of New York, No. 05 Civ. 8133, 2008 U.S. Dist. LEXIS 17283, at *13 (S.D.N.Y.

Mar. 7, 2008). Under Fed. R. Civ. P.15(c), "an amendment changing the name of a defendant

relates back to the original pleading if the claims against the new party arise out of the same

conduct or occurrence set forth in the original pleading, and, within 120 days of filing the

original complaint, the new defendant [i] had received such notice of the action that he will not

be prejudiced in maintaining his defense on the merits, Fed. R. Civ. P. 15(c)(3)(A), and [ii] knew

or should have known that, but for a mistake concerning the identity of the proper party the

action would have been brought against him, Fed. R. Civ. P. 15(c)(3)(B)." Byrd v. Abate, 964 F.

Supp. 140, 146 (S.D.N.Y. 1997).

     Plaintiffs' claims against Greene and Carbone relate back to the date of the filing the

Complaint on March 3, 2008 and are timely. Byrd, 964 F. Supp. at 146; (see also Am. Compl.

---

[5]     On March 14, 2008, Plaintiffs served a subpoena, pursuant to Fed. R. Civ. P. 45, upon the
New York City Law Department ("Corporation Counsel") seeking "the names and respective
departments/precincts (addresses and contact information) of any and all police
officers/detectives/investigators involved in the investigation and/or arrest of Plaintiff Dr. Paul
Selinger in the matter of People v. Pustilnik, Docket No. 2759/2005." (Decl. of Gregory
Calliste, dated Nov. 26, 2008 ("Calliste Decl."), Ex. C.) In a letter to Plaintiffs' counsel, dated
March 25, 2008, Brian G. Maxey, counsel for the City, acknowledged that it was agreed that
Plaintiffs would withdraw the subpoena and Defendants would "provide the information
requested in the subpoena when received." (Calliste Decl. Ex. D.)

¶ 18; SAC ¶ 18.) "Notice of the allegations against [Greene and Carbone] may be imputed to

[them] because both [they] and [the City] are represented by the same attorney." <u>Byrd</u>, 964 F.

Supp. at 146. It was the defense, rather than the plaintiff, who failed to identify Green and

Carbone and Plaintiffs' counsel "requested that information prior to the end of the limitations

period, but Corporation Counsel did not comply until after the limitations period had run." <u>Byrd</u>,

964 F. Supp. at 146; <u>see also</u> <u>Jennings v. Dep't of Justice Serv.</u>, No. 02 Civ. 1405, 2008 U.S.

Dist. LEXIS 61763, at *16 (N.D.N.Y. Mar. 6, 2008).

**(2)     False Arrest**

Defendants argue, among other things, that "the existence of the indictment at the time of

arrest absolutely precludes [P]laintiff's purported false arrest action." (Defs. Mem. at 6.)

Plaintiffs counter, among other things, that "the [Second Amended] Complaint sufficiently

alleges that the Defendants arrested and procured an indictment of Plaintiff Dr. Selinger through

unconstitutional and improper means" and "Defendants lacked probable cause against Dr.

Selinger." (Pls. Mem. at 9, 10.)

"To state a claim for false arrest under New York law, a plaintiff must show that [i] the

defendant intended to confine the plaintiff, [ii] the plaintiff was conscious of the confinement,

[iii] the plaintiff did not consent to the confinement, and [iv] the confinement was not otherwise

privileged." <u>Savino v. City of New York</u>, 331 F.3d 63, 75 (2d Cir. 2003). "It is well settled that

probable cause is a complete defense to an action for false arrest." <u>Jovanovic v. City of New

York</u>, No. 04 Civ. 8437, 2006 U.S. Dist. LEXIS 59165, at *21–22 (S.D.N.Y. Aug. 17, 2006).

Dr. Selinger's false arrest allegations are sufficient to withstand Defendants'

pre-discovery motion to dismiss. <u>Jovanovic</u>, 2006 U.S. Dist. LEXIS 59165, at *21–22 (S.D.N.Y.

Aug. 17, 2006). Dr. Selinger "was actually arrested, [] was caused to suffer imprisonment" and

was "deprived of his freedom" without his consent; "Defendants, their agents, employees and

servants, lacked reasonable suspicion to arrest and detain Dr. Selinger"; and Dr. Selinger's arrest

was "a direct result of the collective Defendants' wrongful, malicious, grossly negligent, wanton,

reckless, and intentional actions." (SAC ¶¶ 71, 73, 75, 100, 108, 131, 140.) And, based upon

Dr. Selinger's allegations that Defendants provided "unsubstantiated, uncorroborated,

prejudicial, and untrue evidence about Dr. Selinger to the Grand Jury, [and as a result]

Dr. Selinger was indicted by the Grand Jury," (SAC ¶¶ 71, 75), the Court cannot conclude, at

this stage, that the indictment shields Defendants from liability. Jovanovic, 2006 U.S. Dist.

LEXIS 59165, at *22; see also id. at *21–22 ("[w]hile a grand jury indictment does create a

presumption of probable cause, it is rebuttable 'by evidence that the indictment was the product

of fraud, perjury, the suppression of evidence by the police or other police conduct undertaken in

bad faith'"); Bullard v. City of New York, 240 F. Supp. 2d 292, 299 (S.D.N.Y. 2003).

### (3)    Qualified Immunity

Defendants argue, among other things, that "the officers reasonably relied upon the prior

indictment as a basis for arrest of [Dr. Selinger] in accordance with established law . . . [and] are

entitled to qualified immunity." (Defs. Mem. at 9.) Plaintiffs counter, among other things, that

the "[Second Amended] Complaint clearly sets-forth a number of acts by the [] Defendants that

cannot be deemed 'reasonable'" because "Defendants knew that their allegations against

Dr. Selinger were untrue and/or unfounded, yet they continued with their false allegations

against Dr. Selinger before the Court, the Grand Jury, and the public at large." (Pls. Mem. at 22,

23.)

There is "insufficient information at this early stage to determine whether the conduct of

the individual officers in this case is protected by qualified immunity." Middleton v. City of

10

New York, No. 04 Civ. 1304, 2006 U.S. Dist. LEXIS 44320, at *12 (E.D.N.Y. June 19, 2006);

see also Caidor v. M&T Bank, No. 05 Civ. 297, 2006 U.S. Dist. LEXIS 22980, at *13 (N.D.N.Y.

Mar. 27, 2006). "There is no question that the right to be free from false arrest was 'clearly

established at the time of the incident.'" Curry v. City of Syracuse, 316 F.3d 324, 336 n.9 (2d

Cir. 2003) (quoting Lennon v. Miller, 66 F.3d 416, 423 (2d Cir. 1995)). Dr. Selinger alleges,

among other things, that Defendants knew or should have known"that their allegations against

Dr. Selinger were unfounded, unsupported, or without legal and/or factual basis" and Defendants

"unreasonably decided to submit evidence of the wrongdoing of others against Dr. Selinger to

insure that the Grand Jury would indict Dr. Selinger along with others that were allegedly

involved in a conspiracy to defraud." (SAC ¶¶ 65, 68.) Accepting Plaintiff's allegations as true

that Defendants arrested Dr. Selinger after submitting evidence that "they knew [was] false and

did so with a malicious intent to effectuate Plaintiff's arrest and prosecution where no probable

cause existed, Defendants cannot establish their entitlement to qualified immunity." Bostic v.

City of Binghamton, No. 06 Civ. 540, 2006 U.S. Dist. LEXIS 73948, at *13 (N.D.N.Y. Oct. 11,

2006); see also id. ("While the facts that may be established through discovery might lead to the

conclusion that the individual defendants possessed actual or arguable probable cause to arrest

Plaintiff and commence his prosecution on certain crimes, that determination will have to await a

summary judgment motion or trial.").

(4)    **Malicious Prosecution**

Defendants argue, among other things, that "[P]laintiff's arrest and prosecution came

about because of the Manhattan District Attorney's independent decision to bring charges" and

"there is no evidence of actual malice by the police officers." (Defs. Mem. at 10.) Plaintiffs

argue, among other things, that "the [Second Amended] Complaint alleges that following the

11

improperly-obtained indictment of Dr. Selinger, Defendant officers continued to support and advance the prosecution of Dr. Selinger knowing that said prosecution lacked probable cause as to Dr. Selinger." (Pls. Mem. at 11.)

"Under New York law, the elements of an action for malicious prosecution are [i] the initiation of a proceeding, [ii] its termination favorably to plaintiff, [iii] lack of probable cause, and [iv] malice." Savino, 331 F.3d at 72 (internal brackets and quotation marks omitted).

Dr. Selinger has adequately pled a malicious prosecution claim. Jovanovic, 2006 U.S. Dist. LEXIS 59165, at *29. He alleges, among other things, that Defendants "began and continued an unreasonable criminal prosecution against Plaintiff without cause"; "Dr. Selinger's criminal case . . . was dismissed outright . . . on March 1, 2007"; any "probable cause diminished and/or was eliminated by evidence which were known to Defendants, and/or would have been known had Defendants conducted a minimal good faith investigation"; and "Defendants' prosecution against Dr. Selinger was committed with malicious intent or purpose and was not done in furtherance of the pursuit of justice." (SAC ¶¶ 123, 157, 160, 163.)

Dr. Selinger's allegations against Greene and Carbone (see SAC ¶¶ 78, 161) are sufficient to surmount a motion to dismiss because if, as alleged, Greene and Carbone knew that the evidence against Dr. Selinger was false or unsubstantiated that might "presuppose[] a lack of probable cause," Jovanovic, 2006 U.S. Dist. LEXIS 59165, at *29. See also Brome v. City of New York, No. 02 Civ. 7184, 2004 U.S. Dist. LEXIS 3943, at *17 (S.D.N.Y. Mar. 17, 2004); Richards v. City of New York, No. 97 Civ. 7990, 2003 U.S. Dist. LEXIS 8037, at *44 (S.D.N.Y. May 7, 2003); Conte v. County of Nassau, No. 06 Civ. 4746, 2008 U.S. Dist. LEXIS 25694, at *36 (E.D.N.Y. 2008).

(5)    **Municipal Liability**

Defendants allege, among other things, that "Plaintiff fails to identify any policy or

practice of the City that lead to any constitutional harm" and "a single incident alleged in a

complaint, especially if it involved only actors below the policy-making level, does not suffice to

show a municipal policy." (Defs. Mem. at 12 (internal citations omitted).)  Plaintiffs counter,

among other things, that "the unconstitutional actions taken against [Dr. Selinger] were caused

by failure to train/supervise the individual Defendants" and Plaintiffs have "amply pleaded facts

of their own civil rights violations by the [] Defendants, and [have] further pleaded that said

violations were the result of a pre-existing policy, practice, and custom by Defendant City of

New York" because the City has "permitted, tolerated and encouraged a pattern and practice of

unjustified, unreasonable and illegal abuses and arrest by police officers of the City." (Pls. Mem.

at 15–16.)

The United States Supreme Court in <u>Monell v. New York City Department of Social

Services</u> held that "it is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

the injury that the government as an entity is responsible under § 1983." <u>Monell v. N.Y. City

Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978); <u>see also</u> <u>Lauro v. Charles</u>, 219 F.3d 202, 206 n.4

(2d Cir. 2000); <u>DeCarlo v. Fry</u>, 141 F.3d 56, 61 (2d Cir. 1998); <u>see also</u> <u>Cooper v. Metro.

Transp. Auth.</u>, No. 04 Civ. 525, 2006 U.S. Dist. LEXIS 47970, at *2 (S.D.N.Y. July 14, 2006).

Dr. Selinger alleges a claim for municipal liability based upon the allegations, among

others, that the City "has permitted, tolerated and encouraged a pattern and practice of

unjustified, unreasonable and illegal abuses and arrest[s] by police officers of the City and the

wrongful detention of the same"; "the City has systematically failed to identify the improper

13

abuse, misuse and violative acts by police officers and officials, while further failing to subject

such officers and officials to discipline, closer supervision or restraint"; "by permitting and

assisting such a pattern of police misconduct the City acted under a color of custom and

policy . . . [which led Defendants] to believe that their actions against the Plaintiffs would be

accepted without [sic] impunity, just as these actions have been so accepted to date"; and

"[s]upervisory police officers exonerate police officers for misconduct and abuse of process

before the investigation of the incident by the police department has been completed." (SAC ¶¶

145, 148, 149, 152.); see also Bangura v. County of Nassau, No. 07 Civ. 2966, 2009 U.S. Dist.

LEXIS 808, at *11 (E.D.N.Y. Jan. 7, 2009) (allegations of "inattention to or knowing

acquiescence in misconduct by law enforcement personnel are sufficient to allege municipal

liability.") Plaintiff's allegations are sufficient to survive a motion to dismiss because alleged

"municipal inaction such as the persistent failure to discipline subordinates who violate civil

rights could give rise to an inference of an unlawful municipal policy of ratification of

unconstitutional conduct within the meaning of Monell." Sarus v. Rotundo, 831 F.2d 397, 400

(2d Cir. 1987); see also Nesbitt v. County of Nassau, No. 05 Civ. 5513, 2006 U.S. Dist. LEXIS

88262, at *16 (E.D.N.Y. Dec. 6, 2006).

      (6)    **Notice of State Law Claims**

      Defendants allege, among other things, that Plaintiffs' failure to file notice of their state

law claims "requires a dismissal for failure to state a cause of action"; and Plaintiffs' state law

claims as against "Greene and Carbone are time-barred because [Greene and Carbone] were not

added to this lawsuit until August 1, 2008, which is one year and five months after the date of

accrual on March 1, 2007." (Defs. Mem. at 14.) Plaintiffs counter, among other things, that the

"Complaint states that Plaintiffs timely filed notices of claim on Defendants . . . in May 2007";

and "the statute of limitations, with respect to Defendants Carbone and Greene should be equitably tolled as a matter of law." (Pls. Mem. at 18.)

"No action . . . shall be prosecuted or maintained against a city . . . for personal injury . . . alleged to have been sustained by reason of negligence or wrongful act of such city . . . or of any officer, agent or employee thereof . . . unless . . . a notice of claim shall have been served upon the city . . . in compliance with section fifty-e of [the New York General Municipal Law]." N.Y. Gen. Mun. Law § 50-i. Section 50-e provides that the notice of claim be filed "within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50-e.

In their Reply, Defendants acknowledge that "the accrual date of [P]laintiffs' state law claims would be March 1, 2007, the date [Dr. Selinger's] prosecution terminated." (Reply at 6.) Plaintiffs' notices of claims appear to have been timely served upon Defendants sometime in May of 2007, i.e., within 90 days of March 1, 2007. See Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 428 (S.D.N.Y. 2002) ("A cause of action for malicious prosecution accrues when the action is terminated in favor of the plaintiff."); (see also SAC ¶¶ 11, 12). Plaintiffs' Complaint was filed on March 3, 2008 which is within "the applicable statute of limitations period under N.Y. Gen. Mun. Law 50-i(1)(c) [which] is one year and ninety days after the happening of the event on which the claim is based [i.e., March 1, 2007]." Warner v. Goshen Police Dep't, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). As discussed above, Plaintiffs' claims against Greene and Carbone are timely because they relate back to the date of the filing of the Complaint. (See supra at 9.)

(7)    **Service Upon Quinn**

Defendants argue, among other things, that "no one at the District Attorney's Office was authorized to accept service on [Quinn's] behalf" and Plaintiffs' service upon Quinn by leaving

15

the summons and complaint at her current place of business at the United States Department of

Justice, Office of Intelligence Policy and Review, 950 Pennsylvania Avenue, NW, Suite 6150,

Washington, DC 20530, does not comply with the New York Civil Practice and Rules

("C.P.L.R.") because "the affidavit [of service filed with the Court] does not state that the papers

were mailed as required by C.P.L.R. § 308(2)." (Defs. Mem. at 16; Reply at 12.) Plaintiffs

counter, among other things, that the affidavit of service of Melvin Shapiro, dated April 23,

2008, shows that Quinn "was personally served, in a timely manner, on April 23, 2008 in

Washington D.C." (Pls. Mem. at 19.)

Federal Rule of Civil Procedure 4(e) "permits service by any means authorized by state

law." Carl v. City of Yonkers, No. 04 Civ. 7031, 2008 U.S. Dist. LEXIS 102489, at *14

(S.D.N.Y. Dec. 18, 2008). Under N.Y. C.P.L.R. § 308, service upon an individual who has not

designated an agent within the state for service of process, Springer v. Singer, No. 88 Civ. 2424,

1990 U.S. Dist. LEXIS 11862, at *3 (S.D.N.Y. Sept. 11, 2990), is "permit[ted] by delivery of the

summons and complaint to a person of suitable age and discretion at the defendant's 'actual

place of business,' and then mailing copies to the person at his last known residence or at his

actual place of business." Carl, 2008 U.S. Dist. LEXIS 102489, at *15 (quoting N.Y. C.P.L.R.

§ 308(2)).

Although a summons and complaint appears to have been delivered to a person of

suitable age and discretion at Quinn's current place of employment, the affidavit of service does

not indicate that any subsequent mailing occurred as required by C.P.L.R. § 308(2). Puccio v.

Town of Oyster Bay, 229 F. Supp. 2d 173, 176 (E.D.N.Y. 2002). The affidavit of service, dated

April 23, 2008, states only that the process server "served the . . . Summons and Complaint on

Kathryn Quinn at USDOJ-NSD Office of Intelligence Policy & Review, 950 Pennsylvania

Avenue, NW, Suite 6150, Washington, DC 20530 by serving Willo T. Lee, General Clerk, authorized to accept." (Calliste Decl. Ex. H); see also Puccio, 229 F. Supp. 2d at 176.

## (8)    Prosecutorial Immunity

Defendants argue, among other things, that "there is no aspect of plaintiff's malicious prosecution claim, or any other claim touching on the conduct of his prosecution, that can overcome the bar of [absolute] prosecutorial immunity" and Dr. Selinger's "bald allegation alone cannot establish that DA Morgenthau directed officers to make an arrest or otherwise assumed personal responsibility for their actions." (Defs. Mem. at 21, 22.)[6] Plaintiffs counter, among other things, that "when [a prosecutor] performs functions normally associated with a police investigation, he loses his absolute protection from liability"; and the "Complaint clearly sets-forth issues of fact regarding the actions taken by the District Attorney Defendants before the establishment of probable cause and before any criminal judicial proceedings were initiated against [Dr. Selinger]." (Pls. Mem. at 23, 24.)

"Prosecutors . . . are absolutely immune from suit 'when they function as advocates for the state in circumstances 'intimately associated with the judicial phase of the criminal process.'" Watkins v. Bibb, No. 04 Civ. 138, 2006 U.S. Dist. LEXIS 47433, at *6–7 (S.D.N.Y. July 12, 2006) (quoting Bernard v. Cty. of Suffolk, 356 F.3d 495, 502 (2d Cir. 2004)). "[W]hether absolute immunity attaches . . . depends on 'the nature of the function performed, not the identity of the actor who performed it.'" Watkins, 2006 U.S. Dist. LEXIS 47433, at *6–7 (quoting Forrester v. White, 484 U.S. 219, 229 (1988)).

---

[6]    The discussion here would also apply to former ADA Quinn had she not been dismissed from this case based upon a lack of jurisdiction under Fed. R. Civ. P. 12(b)(5) for Plaintiff's failure to properly serve her with the Second Amended Complaint. See Section (7) above.

DA Morgenthau's conduct relating to the initiation of a criminal prosecution and prosecution is protected by absolute immunity.  Watkins, 2006 U.S. Dist. LEXIS 47433, at *9; see also Sivadel v. City of N.Y., No. 04 Civ. 2113, 2004 U.S. Dist. LEXIS 15190, at *4 (S.D.N.Y. Aug. 4, 2004) ("Morgenthau is entitled to prosecutorial immunity for those actions."); Francis v. Morganthau, No. 97 Civ. 5348, 1997 U.S. Dist. LEXIS 16138, at *7 (S.D.N.Y. Oct. 16, 1997) ("Morgenthau can be dismissed on [the] ground . . . of absolute immunity.").  The allegations against DA Morgenthau allege misconduct against plaintiff in connection with his prosecution of the case against him.  Lewis v. City of New York, No. 07 Civ. 7258, 2008 U.S. Dist. LEXIS 74123, at *3 (S.D.N.Y. Sept. 16, 2008).  And, Plaintiff's claims fail because "the District Attorney and members of the district attorney's office . . . are immune from claims involving their decisions to prosecute, that they knowingly prosecuted an innocent individual, that they relied upon false evidence to bring a prosecution, that they committed misconduct before the grand jury, [and] from claims that they withheld or suppressed exculpatory evidence." Id. at *3–4 (S.D.N.Y. Sept. 16, 2008) (internal citations omitted).

Dr. Selinger's allegations are also insufficient to state a false arrest claim against DA Morgenthau because he "does not allege that DA Morgenthau was personally involved in his arrest.  Therefore, the false arrest claim must be dismissed as to DA Morgenthau." Washington v. Kelly, No. 03 Civ. 4638, 2004 U.S. Dist. LEXIS 6580, at *9–10 (S.D.N.Y. Apr. 13, 2004); see also id. ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

V.    **Conclusion**

For the reasons stated above, Defendants' motion to dismiss [#34] is granted in part and denied in part.  Plaintiffs' claims against Greene and Carbone under section 1983 for false arrest

and malicious prosecution and state law claims for malicious prosecution, abuse of process, loss

of consortium, and negligence/gross negligence may proceed to discovery.  Plaintiffs' claims

against the City alleging municipal liability may proceed.  Plaintiffs' claims against DA

Morgenthau and former ADA Quinn are dismissed.

The parties are directed to participate in a status/settlement conference on Wednesday,

August 12, 2009, at 9:00 a.m., in Courtroom 21B, 500 Pearl Street, New York, New York.  **The**

**parties are directed to engage in good faith settlement negotiations prior to the conference.**

Dated: New York, New York
      June 30, 2009

                              **RICHARD M. BERMAN, U.S.D.J.**